323 So.2d 774 (1975)
Leonard CHABERT, Individually and as Administrator of the Estate of the minor, Leonard Charles Chabert
v.
LOUISIANA HIGH SCHOOL ATHLETIC ASSOCIATION and Vandebilt Catholic High School.
No. 56455.
Supreme Court of Louisiana.
December 8, 1975.
*775 Charles Gary Blaize, Gerald A. Bosworth, Bosworth & Samanie, Houma, for plaintiffs-applicants.
Charles M. Hughes, Talley, Anthony, Hughes & Knight, Bogalusa, for defendant-respondent.
DIXON, Justice.
We granted writs in this case because of plaintiff-relator's claim of discrimination and infringement upon the right to freedom of religion.
Individually and on behalf of his minor son, Leonard Charles Chabert, plaintiff, Leonard Chabert, brought this action against the Louisiana High School Athletic Association (hereafter LHSAA) and Vandebilt Catholic High School, to enjoin the defendants from declaring that Leonard Charles Chabert had forfeited one year's athletic eligibility pursuant to the LHSAA's "transfer rule."
Terrebonne Parish has been divided into three high school districts by the Terrebonne Parish School Board: Terrebonne, South Terrebonne and H. L. Bourgeois. Leonard Charles Chabert attended La-Cache, a public middle school, during the 1973-1974 school year. Upon completion of the eighth grade at LaCache, which is in the South Terrebonne High School district, Chabert enrolled in Vandebilt, which is in the Terrebonne High School district. Vandebilt is the only Catholic high school in Terrebonne Parish.
*776 Upon his enrollment at Vanderbilt, Leonard Chabert attempted to participate in the school's interscholastic athletic program as a member of the school's football team. Vandebilt ruled Chabert ineligible for his first year, because of section 9 (the transfer rule) of the by-laws of the LHSAA of which Vandebilt is a member. It is stipulated that if Chabert had gone to a public high school he would have been assigned to South Terrebonne High School, and would have been immediately eligible for athletic competition. It is also conceded that had the Chaberts lived in the Terrebonne school district, in which Vandebilt Catholic High is located, he would have been immediately eligible for athletic competition.
The trial court overruled the LHSAA's exceptions of no cause or right of action, and, on the merits, held that the application of the transfer rule to Chabert and others similarly situated (i. e., those who live outside Terrebonne's school district, but wish to send their children to a Catholic high school) operates as a deprivation of rights secured by the First and Fourteenth Amendments to the United States Constitution. Specifically, the trial court found that the transfer rule forces only those persons who reside outside Terrebonne's school district to forfeit a year's athletic eligibility, while those who live within Terrebonne's district and wish to get a Catholic education at Vandebilt do not forfeit any athletic eligibility. Thus, an injunction issued against Vanderbilt Catholic High School and LHSAA prohibiting the enforcement of the transfer rule against Chabert and others similarly situated. Vandebilt Catholic High School did not appeal from this judgment.
On appeal, the First Circuit reversed. Chabert v. Louisiana High School Athletic Association, 312 So.2d 343 (La.App. 1st Cir. 1975). The appellate court found no abridgement of Chabert's religious freedom nor any deprivation of equal protection. The court found a rational basis between the application of the transfer rule to the evil it was intended to protect against, namely, recruiting. Since the rule had a rational basis, the appellate court found no constitutional infirmity.
Before reaching the merits, several threshold issues must be addressed. First, is the LHSAA and its activities subject to court scrutiny? Secondly, does the LHSAA's transfer rule apply under the facts of the instant case?
In Louisiana High School Athletic Association v. St. Augustine High School, 396 F.2d 224, 227 (5th Cir. 1968), that court held:
"There can be no substantial doubt that conduct of the affairs of LHSAA is state action in the constitutional sense. The evidence is more than adequate to support the conclusion of the district court that the Association amounts to an agency and instrumentality of the State of Louisiana. Membership of the Association is relevant85 per cent of the members are state public schools. The public school principals, who nominally are members, are state officers, state paid and state supervised, and together are the heads of all the white public high schools in Louisiana that participate in interscholastic athletics."
However, the LHSAA argues that, since it is a private organization, voluntary in nature, this court should not invoke its jurisdiction to inquire into its internal affairs. In Marino v. Waters, 220 So.2d 802, 805 (La.App. 1st Cir. 1969), the court said:
"A basic and widely accepted general rule is `that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud, lack of jurisdiction, or the invasion of property or pecuniary rights or interests.'"
See also Sanders v. Louisiana High School Athletic Association, 242 So.2d 19 (La.App. 3rd Cir. 1970); David v. Louisiana High School Athletic Association, 244 So.2d 292 (La.App. 1st Cir. 1971); Watkins v. Louisiana *777 High School Athletic Association, 301 So.2d 695 (La.App. 3rd Cir. 1974).
The LHSAA is a voluntary organization of some 450 high schools in the State, 85% of which are public schools. However, the students, coaches and principals are not members of the organization. Marino v. Waters, supra. Therefore, Leonard Charles Chabert is not a member of the LHSAA. This suit is not between the LHSAA and a member school, nor has a member school been penalized as in Sanders, supra. Therefore, while the operation of the transfer rule is called into question in the instant case, this suit is not, contrary to the defendant's contention, involved solely with the internal affairs of a voluntary organization.
Defendant insists that the plaintiff's son has no constitutionally protected right to play football, since the participation in extracurricular activities is a privilege, not a right. Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155 (5th Cir. 1970).
However, in Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed. 2d 534 (1971), the United States Supreme Court abandoned the right-privilege distinction:
"... But this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a `right' or as a `privilege.'"
Thus, in Baltic Independent School District No. 115 v. South Dakota High School Activities Association, 362 F.Supp. 780, 785 (S.D.1973), the court stated:
"Defendants raise the issue that participation in extra-curricular activities is outside the protection of due process and thus is not a constitutionally protected right, citing Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155, 1158 (5th Cir. 1970) and Paschal v. Perdue, 320 F.Supp. 1274, 1276 (D.C. Fla.1970), cases which involved students attempting to get waivers of athletic eligibility requirements. First of all, the decision in this case is made on equal protection grounds, not on grounds of denial of due process. Second, the issue of `right' versus `privilege' was discarded by the Supreme Court in the welfare entitlement case of Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 ..."
In Brenden v. Independent School District 742, 477 F.2d 1292, 1297 (8th Cir. 1973), a contention similar to the LHSAA's was advanced by the Minnesota State High School League. In rejecting the league's position, the court stated:
"The High School League contends that relief under the Civil Rights Act is inappropriate because participation in interscholastic sports is a privilege and not a right. We disagree. The Supreme Court has rejected `the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege." * * * ". Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971). The question in this case is not whether the plaintiffs have an absolute right to participate in interscholastic athletics, but whether the plaintiffs can be denied the benefits of activities provided by the state for male students."
Therefore, it is clear to us that the LHSAA's transfer rule cannot escape judicial review merely because extracurricular activities might be classified as a privilege, not a right. For, as pointed out in Brenden, supra, the inquiry is not whether Leonard Charles Chabert has the absolute right to participate in interscholastic activities, but whether he can be denied the benefits that other Catholic children similarly situated are provided.
*778 R.S. 17:221 (1966), states in applicable part:
"Every parent, tutor, or other person residing within the State of Louisiana, having control or charge of any child between the ages of seven and fifteen, both inclusive (i. e., from the seventh to the sixteenth birthday), shall send such child to a public or private day school provided that any child below the age of seven who legally enrolls in school shall also be subject to the provisions of this Sub-part. Every parent, tutor, or other person responsible for sending a child to a public or private day school under provisions of this Sub-part shall also assure the attendance of such child in regularly assigned classes during regular school hours established by the school board."
The Louisiana legislature has declared that education is compulsory between the ages of seven and sixteen. Given such a policy, the Montana district court's language in Moran v. School District #7, Yellowstone County, 350 F.Supp. 1180, 1184 (Mont.1972), is appropriate:
"In relying on this case the present Montana Supreme Court has recognized the importance of extracurricular activities as an integral part of the total education process. Courts have begun to recognize that extracurricular activities such as football are `generally recognized as a fundamental ingredient of the educational process.' Kelley v. Metropolitan County Board of Education of Nashville, etc., 293 F.Supp. 485, 493 (D.C.1968). See also Lee v. Macon County Board of Education, 283 F.Supp. 194 (D.C.1968). Thus it is apparent that the right to attend school includes the right to participate in extracurricular activities."
Therefore, LHSAA's activities are subject to court scrutiny when a litigant contends he is denied equal protection or religious liberty by the enforcement of LHSAA rules.
Next, we must examine the rule involved to determine whether it is applicable here.
Section 9 of Article 1 of LHSAA's bylaws states, in applicable part:
"Section 9. Transfer Rule.
"Rule 1No student who enrolls in one high school and later transfers to, or enrolls in another, shall be eligible to represent the latter school in any athletic contest.
"A student shall be considered as enrolled in a high school when he has enrolled and attended any class in that school. Attendance in any class constitutes enrollment.
"EXCEPTION IA student who has attended a one, two or three-year high school at the high school level may, upon completion of all grades offered by that school, become eligible at once to participate in athletics upon transferring to a senior high school in his district.
"A student may transfer upon the completion of the seventh or eighth grade to any high school in his home district and be eligible immediately."
Clearly, Rule 1 of Section 9 does not apply, since Leonard Charles Chabert did not transfer from one high school to another. However, the LHSAA takes the position that the second paragraph of Exception I applies, because Chabert transferred (i. e., graduated) from LaCache, which is in South Terrebonne's district, to Vandebilt, which is in Terrebonne's district. By negative inference, therefore, he is not eligible immediately, and Exception II is applicable:
"EXCEPTION IIAny student after completing one year's attendance from date of enrollment in a high school, and fulfilling all other requirements, becomes eligible."
Thus, the LHSAA argues, Chabert forfeits one year's athletic eligibility. (It was stipulated that LHSAA has from the beginning *779 treated all students coming out of an elementary school into a high school as subject to the transfer rule).
While it could be argued that the transfer rule does not require young Chabert to forfeit a year's eligibility, it is also possible to construe it as has LHSAA. In view of the stipulation concerning the uniform and consistent interpretation of its rule, we find that it is applicable to Chabert and others situated like him.
Having decided that the transfer rule is applicable, we move to the determination of whether its application in the instant case violates any rights secured by the state or federal constitutions.
When the application of a rule or statute is attacked, and if the rule or statute in question creates a "suspect classification," then the rule is subject to strict judicial scrutiny and the state (or proponent) must show a compelling state interest if it is to be upheld. Race (Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L. Ed. 220 (1886) ), alienage (Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) ) and religion (Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed. 2d 965 (1963) ), are "suspect classifications."
Furthermore, if the classification affects fundamental rights, such as marriage (Loving v. Virginia, 388 U.S. 1, 87 S. Ct. 1817, 18 L.Ed.2d 1010 (1967) ), then the strict scrutiny test applies. However, education is not such a fundamental right. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
Otherwise, traditional equal protection analysis sustains a classification if it is not arbitrary and bears a rational relationship to a legitimate state interest. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).
Interscholastic activities, especially such competitive ones as football, require some regulation to prevent obvious abuses. We agree with the LHSAA's position that the seriousness of recruiting of high school athletes, and even grade school athletes, cannot be overemphasized. Thus, the application of the transfer rule in the instant case must be scrutinized in light of its avowed purposepreventing the evils of recruiting.
We first consider the applicable standard of review. In Parish v. National Collegiate Athletic Association, 506 F.2d 1028, 1033 (5th Cir. 1975), that court held:
"The district court held that `[o]bviously, the challenged action by the NCAA is not subject to strict judicial scrutiny.' 361 F.Supp. 1220 at 1226. We agree. Strict scrutiny is required only when the challenged classification either impinges upon a fundamental right or discriminates against a `suspect class.'
......
"It follows that appellants are entitled to have the NCAA's challenged classification tested only under the traditional `minimum rationality' standard. Using this test a classification will be upheld if it bears some rational relationship to legitimate state purposes ..."
We agree. Applying the traditional equal protection analysis, i. e., whether the transfer rule has a rational relationship to a legitimate governmental interest, we conclude that LHSAA's transfer rule is not constitutionally infirm.
To discourage unethical recruiting practices, the LHSAA has adopted as district boundaries, across which no student can cross without forfeiting one year's athletic eligibility, school lines (or attendance areas) designated by the parish school board for the parish's public high schools. Catholic and other non-public high schools are deemed to be in the same district as the public high school in their school attendance *780 area, and therefore bound by its district lines. Rule 2 of Section 9 of LHSAA's by-laws states, in part:
"Private schools shall be bound by the same school districts or attendance areas designated by the school board for the public school physically located in their area."
The LHSAA's transfer rule is not arbitrary: rather, as stated in Marino v. Waters, supra, 220 So.2d at 806:
"The transfer rule of the Louisiana High School Athletic Association has been in effect since around 1920 when the youthful association moved to eliminate the recruiting of high school athletes. The transfer rule, in emphasizing the residence of the parents of the student, is by no means capricious and arbitrary. While it is a rational rule which has apparently produced good results, it is not for this Court to pass upon the merits of this particular rule. This is a matter to be determined by the members of the Association, and it is beyond the power of this Court to impose its ideas of what the rules of the Association should be."
Nor can it be said that Leonard Charles Chabert's religious freedom has been abridged. He has not been denied the right to practice his Catholic faith nor has he been denied the right to attend a parochial school. He is, just as all other students, Catholic and non-Catholic alike, whose parents live outside Terrebonne's school district are, subject to a reasonable, nondiscriminatory rule of athletic eligibility should he choose to attend any school in Terrebonne's district.
However, plaintiff argues that Terrebonne Parish presents a unique situation, because Vandebilt is the only Catholic high school in the entire parish. Students whose parents live in Terrebonne's district can attend Vandebilt and immediately participate in athletics, while students whose parents live outside Terrebonne's district can attend Vandebilt but must forego one year of eligibility.
We recognize that the application of the transfer rule may work a hardship on plaintiff and others similarly situated. However, that facts does not make the rule unconstitutional. For, as stated by the district court in Parish v. National Collegiate Athletic Association, 361 F.Supp. 1220, 1226 (W.D.La.1973):
"... Although application of the Rule may produce seemingly unreasonable results in certain situations, this is not unusual for use of generalized rules frequently produces irrational results in isolated circumstances. Such results do not condemn those rules under traditional equal protection scrutiny. Here, NCAA has advanced one step at a time, addressing itself to the phase of the problem which then seems most acute to it. ..."
It must be remembered that the transfer rule, applied in this case to Leonard Charles Chabert and Vandebilt, has been uniformly applied to all schools, public and private, throughout the State of Louisiana for over forty years, including religious schools of the Presbyterian, Baptist, Episcopal, Luthern and Catholic faiths that are LHSAA members. As long as the rule is uniformly applied and not arbitrary, and related rationally to a legitimate governmental interest, that rule cannot be said to violate the guarantee of equal protection of the law. Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). Such is the case with the LHSAA's transfer rule.
Accordingly, the judgment of the Court of Appeal is affirmed. Costs attributable to this appeal to be borne by the plaintiff.
SUMMERS, J., concurs in the result only.