**DENIS J. O'CONNELL HIGH SCHOOL by its Board of Trustees, Appellee,**

v.

**The VIRGINIA HIGH SCHOOL LEAGUE et al., Appellants.**

**No. 78–1064.**

United States Court of Appeals, Fourth Circuit.

Argued March 8, 1978.

Decided Aug. 7, 1978.

John A. Dezio, Charlottesville, Va., for appellants.

William G. McMurtrie, Falls Church, Va., for appellee.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The Virginia High School League (the League) appeals from a judgment of the District Court enjoining the League from denying Denis J. O'Connell High School's (O'Connell) application for membership in the League and from barring O'Connell from competing in League-sponsored championship athletic contests.

O'Connell is a state-accredited private nonprofit Catholic high school located in Arlington County, Virginia. In February of 1977, O'Connell applied for admission to the Virginia High School League, Northern Region. The application was denied because the League's Constitution limits membership to public high schools.[1]

The League is an unincorporated association of public high schools in Virginia under the sponsorship of the School of Continuing Education of the University of Virginia. With only one exception, every public high school in Virginia belongs to the League. In 1913 when the League was founded, its Constitution included both public and private secondary schools without distinction, but in 1925 the Constitution was changed so that only public high schools could be members, and that limitation remains today. The League is maintained by public funds derived in part from the University of Virginia, in part from local school boards, and in part from gate receipts from League-sponsored tournaments.

The League regulates, controls, and governs all athletic, literary and debating contests between and among its member schools. Private schools are invited by the League to participate as a distinct class in certain statewide tournaments, such as those involving tennis, debating and speaking. However, the private schools are excluded altogether from League sponsored tournaments involving such "major" sports as football, basketball and baseball.

O'Connell brought suit against the League pursuant to Section 1983, 42 U.S.C. and its jurisdictional counterpart, Section 1343(3), 28 U.S.C.,[2] alleging in its complaint that the League's refusal to admit O'Connell on the sole basis that it is a private school is an arbitrary classification in violation of the Equal Protection Clause of the Fourteenth Amendment. The complaint further charged that, as a result of this

exclusion, O'Connell's students' choice of private education denies them the right to compete on a tournament level in sports such as football, basketball and baseball, thus placing them in a less favorable competitive position than public high school students to receive athletic scholarships, professional bonuses, and other benefits that accrue to gifted athletes. The League submitted an answer denying the essential allegations of the complaint. Following the Court's denial of the League's Motion to Dismiss and Motion for Summary Judgment, the parties entered into a formal stipulation which was filed with the Court prior to trial. The stipulation stated, *inter alia*, that action by the League in supervising interscholastic competition is taken under color of state law and constitutes state action within the meaning of Section 1983, 42 U.S.C.

At trial, the League presented three basic arguments in defense of its policy of exclusion. First, the League asserted that because O'Connell had not been deprived of any federally protected right, there was no federal question presented so as to support federal jurisdiction alleged to be founded on 28 U.S.C. § 1343. Second, the League argued that its limitation of membership to public schools is rationally related to the League's interest in enforcing its eligibility rules concerning transfer students. The League presented testimony to the effect that, because public schools draw students only from strictly defined zones whereas private schools are not so limited, the League's transfer rules would be difficult to enforce with respect to private schools. Finally, the League argued that the admission of O'Connell, a parochial school, into the League would violate the Establishment Clause of the First Amendment. The Court held that (1) the question whether participation in the League's athletic program can

1. Section 8 (Membership) of the present League Constitution provides, in relevant part:
"8–1–1 Eligibility-Accredited state public high schools in Virginia shall be eligible for membership in the League. Membership shall be renewable annually."

2. O'Connell also brought suit under the Sherman Anti-Trust Act, alleging that the 27 Northern Region Principals had engaged in an illegal group boycott of O'Connell by declining to admit it into the League. This claim was abandoned at trial and not raised upon appeal.

be characterized as a right is not determinative of the Constitutional validity of the League's classification, (2) there is nothing in the record to support the asserted bases for the League's exclusion of private schools from League membership, and (3) the activities of the League neither advance nor inhibit religion, and any financial benefits supplied indirectly by the League to O'Connell in the form of surplus proceeds from League-sponsored championship games would not constitute excessive governmental entanglement with religion so as to violate the Establishment Clause. Thus, because the exclusion of O'Connell from the League lacked a rational basis in violation of the Fourteenth Amendment, and because the inclusion of O'Connell in the League would not violate the First Amendment, the Court enjoined the League from denying O'Connell membership.

On appeal, the League first contends that the District Court erred in holding that jurisdiction exists under 28 U.S.C. § 1343. Section 1343 grants a District Court jurisdiction to redress a deprivation, under color of state law, of a right or privilege secured by the Constitution or federal law. The League's contention is essentially as follows: Since neither education, nor participation in interscholastic competition, nor the speculative possibility of acquiring an athletic scholarship, professional bonus or other emolument are rights secured by the Constitution or federal law, 28 U.S.C. § 1343 did not provide the District Court with jurisdiction over O'Connell's claim. Admittedly, education is not a fundamental right under the Constitution, *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16, and, of course, neither is participation in interscholastic athletics such a right. *Mitchell v. Louisiana High School Athletic Association* (5th Cir. 1970), 430 F.2d 1155, 1158. Nor is the speculative possibility of acquiring an athletic scholarship or professional bonus a federally pro-

tected property right. *Parish v. National Collegiate Athletic Association* (5th Cir. 1975), 506 F.2d 1028, 1034, n. 17. The right allegedly abridged, however, is not the right to education or the right to participate in interscholastic athletics; rather, the alleged abridgement is of the right of private school students to be treated similarly as public school students with regard to participation in interscholastic athletics where there is no rational basis for treating the two classes of students differently. That is, O'Connell claims that its students have been denied their right to an equal opportunity to compete in interscholastic competition. A claimed denial of equal protection by state action arises under the Constitution and would normally be within the District Court's jurisdiction under Section 1343, unless unsubstantial or frivolous. *Baker v. Carr* (1962), 369 U.S. 186, 199, 82 S.Ct. 691, 7 L.Ed.2d 663; *Mitchell v. Louisiana High School Athletic Association, supra,* 430 F.2d at 1158. Under the facts of the present case, we cannot say that the claimed denial of equal protection lacks substance. Therefore, the District Court properly took jurisdiction of the claim pursuant to 28 U.S.C. § 1343.[3]

The League next contends that the District Court erred in holding that there is no rational basis for the provision of the League's Constitution limiting membership to public schools. We agree.

Where, as here, there is no fundamental right or suspect classification involved, the test to determine the validity of state legislation is whether the statutory classification bears some rational relationship to a legitimate state purpose. *San Antonio Independent School District v. Rodriguez, supra,* 411 U.S. at 17, 93 S.Ct. 1278; *Weber v. Aetna Casualty & Surety Co.* (1972), 406 U.S. 164, 172, 92 S.Ct. 1400, 31 L.Ed.2d 768; *See generally Developments in the Law—Equal Protection,* 82 Harv.L. Rev. 1065, 1076–1087 (1969). Furthermore, "State legislatures are presumed to have

---

**3.** *See Chabert v. Louisiana High School Athletic Association* (La.App.1975), 312 So.2d 343, *aff'd.* 323 So.2d 774 (La.1975).

acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland* (1961), 366 U.S. 420, 425–426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

 The reasons for the League's exclusion of private schools, as established by the statements of two League officials, are as follows: (1) League regulations are not sufficiently defined to determine the area from which private schools, many of which may now draw students from an unlimited geographical area, may draw eligible participants for League activities; (2) the lack of an attendance zone for private schools similar to that of public schools, each of which may draw students only from a specified geographical area, would make the transfer rule difficult to enforce and would give private school students an advantage not enjoyed by public school students; (3) students eligible to attend private schools could choose to attend private schools or their public school on the basis of athletic programs in violation of the spirit of the League. The transfer rule cited by the League officials states, essentially, that when a student transfers from one high school to another without a corresponding change in district residence by his parents, the student is ineligible to participate in interscholastic competition for one semester at his new school.

In its Memorandum Opinion, the District Court stated that "[t]he only bases asserted by the League for excluding non-public high schools from League membership are their ability to draw students from a larger geographical area than the public high schools and the difficulty of enforcing the eligibility rules for transfer students." The Court found that "[n]either assertion is sup-

ported by the record—and no reason was suggested why the League's rules could not be uniformly applied to both private and public high schools."

The Court's finding that there is no support in the record for the League's contention that private schools can draw students from a larger geographical area than public schools is based upon the failure of the League to introduce actual evidence to that effect. However, it is well-known that many private schools in Virginia suffer no geographical limitation with respect to the areas from which they may draw students. Furthermore, even assuming that there are some Virginia private schools which do draw from strictly defined areas, these schools unlike their public counterparts, are not so limited by state law and could therefore at any time decide to modify or abolish their self-imposed drawing restrictions and recruit students from anywhere. And even assuming that some of these schools chose to continue drawing from strictly defined areas—an assumption the League is not obligated to make—these areas would overlap with the areas from which public schools can draw. Therefore, because the actual and potential disparity in drawing area between public schools and private schools is beyond doubt, the District Court should have given credence to the League's assertion that public and private schools lack similar attendance zones.

Given the lack of specifically defined drawing areas with respect to many private schools, it is obvious that the admission into the League of private schools would create difficulties in the enforcement of the transfer rule. Although the difficulty of applying the rule to students transferring from private to public schools might not be affected,[4] surely additional difficulties would arise in applying the rule to students transferring from either private or public schools

---

4. A Note to § 28–6–2 of the Rules and Regulations of the League provides that the Transfer Rule applies equally "to a transfer from a private school to a public school as to a transfer from one public school to another." Thus, whether or not private schools become League members, the parents of a student transferring from a private to a public school would presumably need to reside in the public school district following their child's transfer in order for the child to be immediately eligible to participate in the public school's athletic programs.

to "zoneless" private schools. Since the school to which the student transfers would be lacking a district in which his parents could establish residence, it would seem that any student transferring to a "zoneless" private school would necessarily be ineligible to participate in that school's athletic programs for one semester—even if his parents moved next door to the school. Thus, any student transferring to a "zoneless" private school would be victimized by the application of the transfer rule to a situation that it was never meant to cover.

In addition to the problems created by the application of the transfer rule to private schools lacking attendance zones, the League asserted another basis, apparently ignored by the District Court, for restricting its membership to public schools. A League official stated that if private schools became members, students eligible to attend such private schools could choose to attend those schools or their public school on the basis of athletic programs "in violation of the spirit of the League." Although there was no elaboration by the League official as to exactly what this "spirit" is, an examination of the League Constitution and the League Rules and Regulations shows that the placing of great emphasis by a student upon athletic programs in deciding what school to attend does indeed violate "the spirit of the League." Section 6 of the League Constitution states that the object of the League is "to foster among the public high schools of Virginia a broad program of supervised competitions and desirable school activities *as an aid in the total education of pupils.*" (emphasis added) Rules and Regulations Section 26–1–1 states that their purpose is *"to protect and preserve the educational values inherent in [interschool] activities."* (emphasis added) Obviously, the transfer of a student from one school to another solely to participate on the athletic teams of the latter school does not come within the "spirit" of these two sections. More specifically, Section 27–10–1 (Proselyting Rule) states: *"No member school or group of individuals representing the school shall subject a student from another school to undue influence by en-*

*couraging him to transfer from one school to another for League activities."* (emphasis in text) And Section 28–8–3(8) states that "[a]ny student who accepts material or financial inducement to attend a school for the purpose of engaging in athletics, regardless of the source of that material or financial inducement, shall be ineligible" to represent his school in any interschool athletic contest. The sections quoted above serve to illustrate the League's concern that students not be subjected to pressures by coaches, fans and other interested parties to attend one school over another. And, of course, the objective of the transfer rule, which makes a student ineligible to compete for one semester where his move to a new school is not accompanied by a corresponding change in residence by his parents, is basically the same—to deter those who would pressure a student to transfer and to deter the student from succumbing to such pressures by preventing him from becoming immediately eligible to compete at his new school.

The concerns addressed by the above mentioned sections have been recognized by other courts as problems that need to be addressed. In rejecting an attack upon the constitutional validity of a transfer rule imposed by the Louisiana High School Athletic Association, a federal District Court stated that "[t]he transfer rule was adopted to prevent recruiting of school children by overzealous athletic coaches, fans, and school faculty. . . . All parties to this suit agree that this sort of recruiting of school children to engage in athletic competition may be considered harmful by the state, and that it may take steps to prevent this harm." *Walsh v. Louisiana High School Athletic Ass'n.* (E.D.La.1977), 428 F.Supp. 1261, 1264. In another case involving a challenge to the application of a transfer rule, the Louisiana Court of Appeals stated:

"Past history, and especially recent events, have shown the unconscionable actions to which some individuals will resort in order to insure themselves of a superior athletic program. Illegal re-

cruiting of promising young athletes is the gravamen of this recurring problem. Not only is the atmosphere of fair competition irreparably clouded, but many times the lives of the athletes themselves in that athletics becomes primary and academicism secondary under the overbearing scrutiny of those who would entice through illicit means. It is unarguable that any state has an interest in prohibiting such occurrences in its high schools. One means towards such a prohibition is to impede those who would be the innocent objects of illegality from being immediately profitable to the perpetrators. Certainly the advantages of such undisciplined activity are considerably lessened by the application of the rule complained of herein." *Chabert v. Louisiana High School Athletic Association* (La.App.1975), 312 So.2d 343, 346. The language of these two cases makes it clear that the State is justified in taking any reasonable step to prevent actual or potential abuse of student athletes by those persons who would recruit these students for their athletic ability. Certainly, therefore, reasonable measures taken to reduce or remove the possible temptation to make a choice of schools on the basis of their respective athletic programs are justified.

At present a student who desires to engage in League-sponsored tournaments is not exposed to a potentially tempting choice of schools; of the public schools, he is usually eligible to attend only the one serving the district in which he lives, and private schools are ineligible for League tournament competition. If, however, private schools were admitted to the League, a student eligible to attend such schools could choose to attend any of them or to attend his public school, thus exposing himself to the potential pressures that the League seeks to forestall, and perhaps basing his ultimate choice on athletic considerations in violation of the above mentioned "League spirit." Nor would the transfer rule be effective to deal with such a situation, for that rule applies only to transfers from one secondary school to another, and not to the initial choice of a secondary school. Moreover, the transfer rule would also be inadequate to deal with the situation where a student's residence falls within the district of a private school as well as that of his public school. In such a case the student could presumably transfer back and forth between the two schools without suffering any ineligibility—again, exposing himself to those pressures and temptations against which the League attempts to protect its students.

Against this background, the League's exclusion of private schools must be viewed as one of several reasonable steps taken to combat the serious problem of adolescent students being subjected to and perhaps succumbing to pressures to attend one school over another on the basis of athletic considerations. That there was no evidence presented to establish the existence of such a problem in Virginia is not important, for not only do several provisions of the League's Constitution and Rules and Regulations show clearly the League's concern with the possible occurrence of such activities, but experience elsewhere has shown that this is indeed a problem which needs to be addressed.[5] And "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."[6]

■ Also inconsequential is the fact that there may be means of addressing the problem other than by blanket exclusion of private schools which may result in less hardship to students at private schools such as O'Connell. The task of the courts in passing on the validity of a classification under the standard Equal Protection test is not to determine if it is the best way, or even a good way, of accomplishing a legitimate state objective. Our task is only to determine whether the classification makes sense in light of the purpose sought to be achieved; beyond that point the wisdom of

5. *Walsh, supra*, 428 F.Supp. 1261.

6. *McGowan v. Maryland, supra*, 366 U.S. at 426, 81 S.Ct. at 1105.

the State must be allowed to prevail. Having found that the classification here challenged is rationally related to a legitimate State objective, this Court has completed its consideration of the matter.

Because we find that the League may constitutionally exclude private schools from League membership, we do not address League arguments concerning burden of proof, nor do we address the League contention that the admission of a private sectarian school such as O'Connell would violate the Establishment Clause of the First Amendment.

Accordingly, the judgment below is reversed.

*REVERSED.*

BUTZNER, Circuit Judge, dissenting:

I agree that the district court properly took jurisdiction in this case, but I would affirm the judgment.

Denis J. O'Connell High School brought this action because its exclusion from the Virginia High School League handicaps its students who compete for athletic scholarships and other benefits available to talented athletes. To explain its exclusion of private and parochial schools, the League cited the ability of these schools to draw students from a wider geographic area than public schools and the difficulty in enforcing the eligibility rules for transfer students.

Quite properly, the district court rejected these arguments. The geographic areas from which public schools draw vary widely in size and population. There is ample evidence to support the district court's determination that the League's asserted justifications for excluding private and parochial schools lack a factual foundation. Since this finding is not clearly erroneous, it is binding on us. Fed.R.Civ.P. 52(a).

Moreover, the cases cited to support the League's policy concern no-transfer rules within an association including public, private, and parochial schools. *See Walsh v. Louisiana High School Athletic Ass'n.*, 428 F.Supp. 1261 (E.D.La.1977); *Chabert v. Louisiana High School Athletic Ass'n.*, 312 So.2d 343 (La.App.), *aff'd* 323 So.2d 774 (La.1975). No case approving a policy excluding non-public schools from an athletic association has been cited. The fact that the Louisiana association operates and enforces a no-transfer rule successfully without excluding private and parochial schools belies the League's argument.

Because the record discloses no factual basis for concluding that the League's exclusionary rule bears some rational relationship to the state's purpose, I am persuaded that the district court correctly decided that the rule violated the equal protection clause. *See San Antonio School District v. Rodriquez*, 411 U.S. 1, 40, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The district court also properly held that admission of Denis J. O'Connell High School to the League would not violate the establishment clause of the first amendment. *See Wolman v. Walter*, 433 U.S. 229, 235–36, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977). Consequently, I dissent.