CHRISTIAN BROTHERS INSTITUTE OF NEW JERSEY, T/A BERGEN CATHOLIC HIGH SCHOOL, PLAINTIFF-RESPONDENT, v. NORTHERN NEW JERSEY INTERSCHOLASTIC LEAGUE; BOARD OF EDUCATION OF BLOOMFIELD HIGH SCHOOL; BOARD OF EDUCATION OF BERGENFIELD HIGH SCHOOL; BOARD OF EDUCATION OF CLIFTON HIGH SCHOOL; BOARD OF EDUCATION OF FAIR LAWN HIGH SCHOOL; BOARD OF EDUCATION OF HACKENSACK HIGH SCHOOL; BOARD OF EDUCATION OF PARAMUS HIGH SCHOOL; BOARD OF EDUCATION OF PASSAIC VALLEY HIGH SCHOOL; BOARD OF EDUCATION OF RIDGEWOOD HIGH SCHOOL; BOARD OF EDUCATION OF TEANECK HIGH SCHOOL; AND BOARD OF EDUCATION OF WAYNE VALLEY HIGH SCHOOL, DEFENDANTS-APPELLANTS.

Argued March 9, 1981—Decided June 15, 1981.

Robert H. Greenwood argued the cause for appellants (*Greenwood & Weiss,* attorneys; *Stephen G. Weiss,* on the brief).

Thomas J. Herten argued the cause for respondent (*Breslin, Herten & LePore,* attorneys; *Michael J. Breslin, Jr.,* on the brief).

The opinion of the Court was delivered by

SULLIVAN, J.

Plaintiff Christian Brothers Institute of New Jersey, t/a Bergen Catholic High School (Bergen Catholic), filed the instant suit against defendant Northern New Jersey Interscholastic League (League) in April 1976 after its several applications for League Membership had been denied. Bergen Catholic is a private, sectarian, boys' high school in Oradell, New Jersey, run by the Christian Brothers. It has experienced difficulty in scheduling athletic contests with high schools in its area for many years. Thus, in 1965, 1972 and 1974 it submitted applications for membership in the defendant League. The League is an athletic association organized for the purpose of fostering athletic competition among students of

member schools.[1] In each instance, Bergen Catholic was denied membership in the League ostensibly because the League's constitution limited membership to "public schools." In May 1974, Bergen Catholic filed a complaint against the League with the New Jersey Division on Civil Rights charging a violation of the Law Against Discrimination, *N.J.S.A.* 10:5–1 *et seq.*, specifically, discrimination because of "creed."

After a series of conferences and discussions, a Conciliation Agreement (Agreement) was entered into in which the parties expressed their desire to settle the matter without the necessity of a public hearing, or a determination on the issue of discrimination. Under the Agreement, defendant League agreed to amend its constitution by deleting the word "public" from the article which limited membership to "public high schools of Northern New Jersey." The Agreement further provided that Bergen Catholic would be entitled to apply for membership in the League and, if a vacancy occurred, its application would be evaluated by objective and nondiscriminatory criteria. The Agreement specifically stated that it was to operate as a complete and final disposition of the matter with prejudice, subject only to fulfillment of the provisions of the Agreement pursuant to the enforcement section of the Law Against Discrimination, *N.J.S.A.* 10:5–17. The Director of the Division on Civil Rights formally approved the Agreement on March 5, 1976.

During the period that the Agreement was being negotiated, a vacancy occurred in League membership. A committee was appointed by the League to evaluate applicants and to develop objective criteria to be used in the evaluation. Eight high schools applied to fill the vacancy, including Bergen Catholic and Don Bosco, another nonpublic high school. Each of the appli-

---

[1] The League's membership has always consisted of ten public high schools. It schedules contests for a wide variety of activities, including the major sports of football and basketball. Both boys' and girls' competitions are conducted under League supervision.

cant schools was visited by the committee and evaluated according to the following eight criteria:

1. Location
2. Comprehensiveness of boys' program
3. Comprehensiveness of girls' program
4. Suitability of outdoor facilities
5. Suitability of indoor facilities
6. Administration of program
7. Financial support of program
8. Subjective feeling of desirability of school as a member

The visits and evaluations resulted in a committee report which rated Bloomfield High School the highest and Bergen Catholic the lowest of the eight applicant schools. One of the reasons for Bergen Catholic's low rating was the lack of a girls' athletic program. At the time, no arrangements had been made by Bergen Catholic to affiliate with a sister school in a joint athletic program. On March 18, 1976, at a regular League meeting, the recommendation of the evaluation committee was adopted by unanimous vote and Bloomfield High was accepted into League membership.

Bergen Catholic did not attempt to challenge the League action as a violation of the Conciliation Agreement. Instead, on April 13, 1976, it filed the present suit in the Law Division charging that it was being unlawfully discriminated against in violation of its rights under the United States and New Jersey Constitutions as well as under the Law Against Discrimination, *N.J.S.A.* 10:5–1 *et seq.*, and the federal civil rights statute, 42 *U.S.C.A.* § 1981 *et seq.*

Following a lengthy trial, the court found in favor of plaintiff. Initially, it considered whether plaintiff's suit was barred by virtue of its having neglected to exhaust its administrative remedies in the Division on Civil Rights (*i. e.*, failure to seek enforcement of the Conciliation Agreement). The court acknowledged that under section 26 of the Law Against Discrimination, once a complainant elected to proceed under that law, its exclusive remedy for an alleged violation thereof was in that

proceeding and no court could thereafter entertain jurisdiction of the same violation. *N.J.S.A.* 10:5–27. However, since the complaint also alleged violations of statutory and constitutional law independent of the Law Against Discrimination, the court concluded that it had jurisdiction to consider these independent charges.

After evaluating the various constitutional and statutory challenges, the court found that the rejection of plaintiff's application was the result of unlawful discrimination in violation of the equal protection guarantees of both the Fourteenth Amendment to the United States Constitution and Article I, paragraphs 1 and 5 of the New Jersey Constitution, as well as a violation of the federal civil rights statute, 42 *U.S.C.A.* § 2000a. The trial judge found no discrimination based on religion. The court based its ruling on findings that the criteria used in evaluating Bergen Catholic's application were not objective and nondiscriminatory and had been applied in a nonobjective and discriminatory manner. As a result, the court ordered that plaintiff be admitted into the League even though no vacancy in the League membership then existed. It further ordered that a plan be devised for expansion of the League and that a system of evaluating applicants for League membership be devised based upon a nondiscriminatory and objective set of criteria.[2] The Appellate Division affirmed substantially for the reasons stated in the trial court's oral opinion. Certification was granted by this Court. 85 *N.J.* 140 (1980). We now reverse and direct that plaintiff's complaint be dismissed.

The trial in the Law Division, in essence, involved plaintiff's complaint that the terms, as well as the spirit, of the Conciliation Agreement had not been observed. The basic issue tried was Bergen Catholic's contention that its application to fill the vacancy had not been "evaluated by objective and nondiscrimi-

---

[2]The judgment was conditioned on Bergen Catholic effectively and satisfactorily affiliating itself with a sister school so as to afford participation in athletic events by girls.

natory criteria." It was asserted that the criteria *used* were not objective and nondiscriminatory, and that in addition, those criteria had not been *applied* in an objective and nondiscriminatory manner.

■ We conclude that, since Bergen Catholic elected to seek relief in the Division on Civil Rights, rather than file a suit in Superior Court, and agreed that the Conciliation Agreement entered into before the Division was to operate as "a complete and final disposition of the matter" subject only to fulfillment pursuant to the enforcement provisions of the Law Against Discrimination, *N.J.S.A.* 10:5–17, it was barred by the exclusive jurisdiction language in *N.J.S.A.* 10:5–27, as well as by the terms of the Conciliation Agreement, from filing this suit.[3] *N.J.S.A.* 10:5–27 states that the procedure set forth in the Law Against Discrimination "shall, while pending, be exclusive; and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the individual concerned." Here the Conciliation Agreement by its very terms was a "final disposition of the matter." The fact that, in this suit, plaintiff now charges that the conduct underlying its grievance also constituted violations of constitutional and statutory law independent of the Law Against Discrimination does not affect the applicability of the exclusivity provisions of the Law. Plaintiff's election to pursue its grievance before the Division on Civil Rights operated to waive its right to pursue, in state court, other avenues of relief for the same grievance except through the appellate process.

■ Such election, however, did not prevent plaintiff from obtaining judicial determination of its constitutional claims. The proper procedure was to raise these claims before the

---

[3]The trial court incorrectly read *Jackson v. Concord Company,* 54 *N.J.* 113 (1969) and *Gray v. Serruto Builders, Inc.,* 110 *N.J.Super.* 297 (Ch. Div.1970) as permitting the commencement of lawsuits subsequent to the institution of actions in the Division on Civil Rights when such actions are grounded on alleged violations of other state or federal statutes or of constitutional law.

Appellate Division upon appeal from an adverse decision of the Division on Civil Rights. Although it would have been preferable for plaintiff to note its constitutional claims in its complaint before the Division, see *Paterson Redevelopment Agency v. Schulman* 78 *N.J.* 378, 386–388 (1979), the Division did not have the power to resolve these claims. Administrative agencies have power to pass on constitutional issues only where relevant and necessary to the resolution of a question concededly within their jurisdiction. See *Hunterdon Cent. High Sch. Bd. of Ed. v. Hunterdon Cent. High Sch. Teachers' Ass'n*, 174 *N.J.Super.* 468, 474–475 (App.Div.1980), aff'd o. b., 86 *N.J.* 43 (1981) (PERC did not exceed its authority by passing on constitutional issue where necessary to resolve scope of negotiation question).

While we hold that the trial court should have refused to hear this matter, it also is necessary to make some comment upon the court's findings of discrimination in violation of the equal protection guarantees of both the Fourteenth Amendment to the United States Constitution and Article I, paragraphs 1 and 5 of the New Jersey Constitution. The ultimate finding of the trial court was that the League's eight criteria for membership were not objective and nondiscriminatory, and had been applied in a nonobjective and discriminatory manner, in violation of the equal protection guarantees of the Federal and State Constitutions. In so ruling the court relied, at least in part, upon a preliminary finding that the League's pre-1976 policy of limiting League membership to public schools, *per se*, constituted *de facto* discrimination and a denial of equal protection. The court stated in its opinion that a policy of "subtle hostility" had carried over into the League's evaluation of plaintiff's 1976 application for membership. As will be discussed *infra*, it is clear that a rational basis can exist for an interscholastic league's decision to limit membership to public schools. Thus, we conclude that no *per se* equal protection violation existed.

While state action, necessary to invoke the Fourteenth Amendment of the Federal Constitution is present in cases such

as this since public funds are used to maintain athletic programs in the public school systems, the classification of public high schools is not a suspect classification and only a rational basis therefor need be shown in order to avoid conflict with the Fourteenth Amendment. Both the Third and the Fourth Circuits have ruled that a rational basis may exist for limiting membership in interscholastic athletic organizations to public schools.

In *Valencia v. Blue Hen Conference,* 476 *F.Supp.* 809 (D. Del. 1979), aff'd without opinion, 615 *F.*2d 1355 (3 Cir. 1980), parents of students attending St. Mark's High School in New Castle County, Delaware, filed suit against defendant Blue Hen Conference, an association of public high schools, charging that the refusal by the Conference to admit St. Mark's to membership was *inter alia,* a denial of equal protection under the Fourteenth Amendment. 476 *F.Supp.* at 812. The Blue Hen Conference Constitution limited association membership to public schools. *Id.* On a motion for a preliminary restraint, the trial court ruled that the classification was supportable by legitimate interests in preventing athletic recruiting and maintaining a competitive balance among schools within the association. *Id.* at 826. St. Mark's lack of a defined attendance area was held to be an additional reason for excluding private schools from the Conference. *Id.*

*Denis J. O'Connell High Sch. v. Virginia High Sch. League,* 581 *F.*2d 81 (4 Cir. 1978), *cert.* den., 440 *U.S.* 936, 99 *S.Ct.* 1280, 59 *L.Ed.*2d 494 (1979), is to the same effect. In that case, a Catholic high school was denied membership in a public school athletic league solely on the ground that it was a private school. 581 *F.*2d at 83. The school challenged the league action claiming a denial of equal protection through state action. *Id.* The Fourth Circuit held that participation in interscholastic athletics was not a fundamental right and that a classification limiting league membership to public schools was not suspect so that the test to be applied was whether the classification bore some rational relationship to a legitimate state purpose. *Id.* at 84.

The court found in the record a rational basis for the classification based primarily on the lack of an attendance zone for private schools similar to that of public schools. Among other things, the court held that this created difficulties in the enforcement of the league transfer rule which made certain transfer students ineligible to participate in interscholastic competition for a specified period of time. *Id.* at 85–87. In addition, the court found merit to the argument that exclusion of private schools was a reasonable step towards combating the serious problem of adolescent students being subjected to and perhaps succumbing to pressures to attend one school over another on the basis of athletic considerations. *Id.* at 87.

It thus appears settled that a rational basis can exist for an interscholastic league limited to public schools and that such a limitation does not result *per se* in a denial of equal protection under the Federal Constitution. Similarly, a rational basis would be sufficient to withstand any challenge under Article I, paragraphs 1 and 5 of the New Jersey Constitution. See *State v. Senno*, 79 *N.J.* 216, 225–226 (1979); *Taxpayers Ass'n of Weymouth Tp., Inc. v. Weymouth Tp.*, 80 *N.J.* 6, 37–38 (1976), *cert.* den., 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.2d* 373 (1977); *State v. Smith*, 58 *N.J.* 202, 207 (1971). In any event, under the Conciliation Agreement, defendant League has agreed to open its membership to nonpublic high schools so that the classification issue discussed in *Blue Hen* and *Virginia High Sch. League*, is not a viable concern in this case.

We decline to consider whether or not the League's post-1976 treatment of Bergen Catholic was a violation of the terms of the Conciliation Agreement and sufficient to justify a finding of illegal discrimination under *N.J.S.A.* 10:5–1 *et seq.* The determination of those factual issues is properly left to the Division on Civil Rights, should Bergen Catholic elect to pursue this matter further. The judgment of the Appellate Division is hereby reversed and the cause remanded to the trial court for entry of a judgment dismissing plaintiff's complaint without

prejudice to plaintiff presenting such application to the Division on Civil Rights as may be appropriate.

Reversed.

*For reversal*—Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance*—None.