**Marlene PITTMAN, Plaintiff,**

v.

**George LaFONTAINE, Ed Newman, Phyllis Parker and Immunomedics, Inc., Defendants.**

**Civ. A. No. 90–1258.**

United States District Court, D. New Jersey.

Jan. 18, 1991.

836

Marlene Pittman, Belleville, N.J., pro se plaintiff.

Jo Anne C. Adlerstein, Stern, Dubrow & Marcus, Maplewood, N.J., for defendants.

## OPINION

LECHNER, District Judge.

Pro se plaintiff Marlene Pittman ("Pittman") brought this action pursuant to the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, against her former employer Immunomedics, Inc. ("Immunomedics"), Phyllis Parker ("Parker"), the Personnel Manager of Immunomedics, Edward Newman ("Newman"), Pittman's former supervisor and George LaFontaine ("LaFontaine"), a former employee of Immunomedics (Immunomedics, Parker and Newman are collectively referred to as the "Movants," and the Movants and LaFontaine are collectively referred to as the "Defendants").

Immunomedics, Newman and Parker[1] move for summary judgment of the claims against them pursuant to Fed.R.Civ.P. 56.[2] The motion is decided on the basis of the papers submitted pursuant to Fed.R.Civ.P. 78.

For the reasons which follow, the motion for summary judgment is granted. Additionally, the complaint against LaFontaine is dismissed *sua sponte* pursuant to Rule 4(j) of the Federal Rules of Civil Procedure.

*Facts*

Pittman was hired as a temporary trainee by Immunomedics on 11 August 1986 "in accordance with the Job Training Partnership Act and a program of the Mayor's Office of Employment and Training." Immunomedics Answer at 1. She was hired by Immunomedics as a full-time regular employee on 2 February 1987 as an Animal Technician. *Id.* at 1, 3. The position of Animal Technician requires a high school diploma or equivalency diploma. Investigation Findings at 5. The employment of Pittman by Immunomedics was terminated on or around 13 May 1988. Immunomedics Answer at 5; Investigation Findings at 2.

On 27 September 1988, Pittman filed charges with the Division of Civil Rights

---

1. It appears Pittman attempted unsuccessfully to serve LaFontaine with the complaint and summons. The Notice of Service for LaFontaine shows a United States Marshal named "S. Jackson" attempted to serve LaFontaine with the complaint and summons at Immunomedics on 18 September 1990. The Notice of Service for LaFontaine contains the notation: "Subject no longer employed at above." *See* Notice of Service for George LaFontaine.

2. In support of their motion, the Movants have submitted: the Brief in Support of Motion for Summary Judgment of Defendants Newman, Parker and Immunomedics, Inc. (the "Moving Brief"); the Affidavit of Parker (the "Parker Aff."), included in the Appendix to the Moving Brief (the "Appendix"); the Affidavit of Jo Anne C. Adlerstein, included in the Appendix; the discrimination charges of Pittman filed with the Division on Civil Rights, or the "DCR" (the "DCR Charges"), included in the Appendix as Exhibit A; the Pre–Interview Information sheet completed by Pittman and submitted to the DCR in support of the DCR Charges (the "Information Sheet"), included in the Appendix as Exhibit B; the Interview Form completed by the DCR based on information obtained during its interview of Pittman (the "Interview Form"), included in the Appendix as Exhibit C; the Humiliation Interview Questions completed by Pittman in support of the DCR Charges (the "Humiliation Questionnaire"), included in the Appendix as Exhibit D; the Verified Complaint of the DCR (the "Verified Complaint"), included in the Appendix as Exhibit E; the 14 October 1988 letter from the DCR to Immunomedics notifying Immunomedics that a fact-finding conference (the "Fact–Finding Conference") was scheduled for 14 November 1988 and an attached Document and Information Request, included in the Appendix as Exhibit F; the 15 November 1988 letter from Immunomedics to the DCR in answer to the Verified Complaint (the "Immunomedics Answer"), included in the Appendix as Exhibit G; hand-written notes from the fact-finding conference (the "Conference Notes"), included in the Appendix as Exhibit H; a 14 October 1988 letter from the DCR to Pittman notifying her of the scheduled Fact–Finding Conference, included in the Appendix as Exhibit I; a 2 May 1989 letter from Nathaniel Parks, Sr. ("Parks"), Investigator for the DCR, to Pittman requesting that she provide additional substantiation for the DCR Charges (the "2 May 1989 DCR Letter to Pittman"), included in the Appendix as Exhibit J; the 9 May 1989 hand-written notes by Parks of his conversation with Pittman (the "9 May 1989 Notes"), included in the Appendix as Exhibit K; the 12 June 1989 notes by Parks of investigatory visit to Immunomedics (the "12 June 1989 Notes"), included in the Appendix as Exhibit L; the Finding of No Probable Cause and the attached Finding of the Investigation (the "Investigation Findings"), included in the Appendix as Exhibit M; the opinion of the New Jersey Appellate Division, *Pittman v. Immunomedics, Inc.*, slip op. A–0905–89T1 (N.J.App.Div. 5 October 1990), affirming the Finding of No Probable Cause (the "Appellate Division Opinion"), included in the Appendix as Exhibit N; the Determination of the Equal Employment Opportunity Commission (the "EEOC") adopting the findings of the DCR (the "EEOC Determination"), included in the Appendix as Exhibit O; four Employee's Claim Petitions of the Division of Worker's Compensation, included in the Appendix as Exhibit P; and the 12 November 1990 letter from the Movants to the Court (the "12 November 1990 Movants' Letter to the Court") and attached slip opinion.

In opposition to the motion of the Movants, Pittman has submitted the Brief in Objection to Motion for Summary Judgment on Behalf of the Plaintiff Marlene Pittman (the "Opposition").

Also relevant are the following documents which are attached to the complaint: the EEOC Determination; the DCR Charges; a five-page document with sections entitled "Procedural History," "Statement of Facts," and "Argument"; and various documents relative to her receipt of medical care.

(the "DCR") against Immunomedics alleging she was discharged because she refused to have sexual relations with George LaFontaine, Sr., a Research Product Development Manager at Immunomedics. *See* DCR Charges; Information Sheet; Interview Form; Humiliation Questionnaire. Additionally, Pittman alleged she suffered gender discrimination because Frank Ostello, a male employee whom she allegedly trained, was hired as her replacement. *Id.*

The DCR issued a Verified Complaint against Immunomedics. The Verified Complaint alleged Immunomedics subjected Pittman to sexual harassment and unlawfully discharged her on the basis of her gender. The Verified Complaint also reiterated the allegations of Pittman that LaFontaine made sexual remarks to her and that she believed she was discharged because she rejected his sexual advances. *See* Verified Complaint. Additionally, the DCR issued a document request to Immunomedics, *see* Document and Information Request, to which Immunomedics responded. Parker Aff. ¶ 6.

The DCR held a Fact–Finding Conference on 14 November 1988. Present at the Fact–Finding Conference were Adlerstein, Parker, LaFontaine and Pittman. *See* Conference Notes. The DCR investigator interviewed Parker, LaFontaine and Pittman. Parker Aff., ¶ 7. In addition, Pittman questioned Parker and LaFontaine through the investigator. *Id.*[3] LaFontaine denied he made any sexual remarks to Pittman and alleged that it was Pittman who was sexually forward with him. In addition,

LaFontaine denied he was ever the supervisor of Pittman. *Id.*

Immunomedics contended it was in possession of affidavits from three witnesses supporting its assertion that it was Pittman who was sexually forward with LaFontaine. *Id.* It also asserted Frank Ostello was hired not as a replacement for Pittman, but as a Research Assistant, a position requiring a bachelors degree with a concentration in biology. *Id.* Immunomedics asserted Pittman was discharged because her job was eliminated due to a lack of work and that the positions of four others, both males and females, were also eliminated. *Id.*[4]

On 2 May 1989, the DCR notified Pittman it needed additional substantiation of her charges in order to make a recommendation on her behalf. *See* 2 May 1989 DCR Letter to Pittman. Pittman provided the DCR with the names of additional witnesses at Immunomedics. *See* 9 May 1989 Notes. The DCR contacted the witnesses it was able to locate at Immunomedics but was unable to elicit information substantiating the allegations of Pittman. *See* 12 June 1989 Notes. On 25 July 1989, the DCR issued to Pittman a Finding of No Probable Cause pursuant to N.J.S.A. 10:5–14 (the New Jersey Law Against Discrimination, or the "LAD"[5]) and N.J.A.C. 13:4–6.1(d). *See* Finding of No Probable Cause.

On 8 February 1990, the EEOC issued a "right to sue" letter to Pittman which notified her of its adoption of the findings of the DCR and of her right to file a federal court action. *See* EEOC Determination.

---

**3.** Pittman makes an unsworn allegation that the date of the Fact–Finding Conference was 22 November 1988. She includes among her unsworn allegations that she was not given the opportunity to cross-examine witnesses. Opposition at unnumbered page 5. She does not state, however, that she was denied the opportunity to question witnesses through the investigator as permitted under N.J.A.C. § 13:4–2.3. *See infra* at 845.

**4.** The Immunomedics Answer set forth these same defenses. *See* Immunomedics Answer.

**5.** The LAD makes it unlawful for an employer to terminate the employment of an employee or to discriminate in terms of salary or other terms

of employment on the basis of sex. Section 10:5–12 provides in relevant part:

**10:5–12. Unlawful employment practice or unlawful discrimination**

It shall be unlawful employment practice, or, as the case may be, unlawful discrimination: a. For an employer, because of the ... sex ... of any individual ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment....

. . . .

N.J.S.A. 10:5–12.

On 9 November 1989, after the time for appeal of the DCR's findings had passed, Pittman filed a Motion for Leave to File a Notice of Appeal *nunc pro tunc.* The motion was denied. *See* Moving Brief at 3. Pittman's subsequent motion for reconsideration, filed 12 December 1989, was granted on 11 January 1990. *Id.* at 4. Pittman submitted several briefs and extensive written documentation to the Appellate Division in support of her appeal. *Id.* In an opinion filed 5 October 1990, the Appellate Division affirmed the decision of the DCR. In doing so, it held:

> Dr. LaFontaine did not work with plaintiff; he was not her supervisor and he played no role in her termination.... Plaintiff's employment, as well as two males and two other females, was terminated due to a lack of work.

*See* Appellate Division Opinion at 2–3.

On 28 March 1990, Pittman filed her complaint in this court against Immunomedics, LaFontaine, Parker and Newman pursuant to the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–5. Pittman alleged LaFontaine "was responsible for lay offs in his department of in vitro manufacture. In repraisal for rebuking his demand for sex occuring on our about April 18, 1988 after subjecting the Plaintiff to public humiliation." Complaint, ¶ 2. As to Parker, Pittman alleged: "Coherse Phillis Parker, the personnel manager to take the plaintiff out of her department of in vivo studies and her protected position of Research Assistant in biological research to demote her from position of Research Assistant and fire her along with the in vitro manufactoring staff that had been targeted for lay off[.]" *Id.* As to Newman, Pittman alleged: "The Plaintiff was subjected to intentional discrimination by Ed Newman who hired her with some research experience and no background in Nuclear Medicine and at a lower salary then he would have been compelled to pay to Ellen Rubin who also interviewed for the position of Research Assistant." *Id.,* ¶ 13.

In addition, Pittman appeared to reiterate her claim that Research Assistant Frank Ostello, a male employee whom she allegedly trained, was discriminatorily hired to replace her. Pittman alleged she "was subjected to disparate treatment with regards to training requirements and salary in that she was trained to do the duties of a Research Assistant under the false title of animal technician ...," complaint, ¶ 14, that she "was subjected to intentional discrimination and disparate treatment when her assistant a male with no background in Nuclear Medicine relying on her training to do the work was employed at a higher starting salary ...," complaint, ¶ 15, and that she was "subjected to disparate treatment in salaries" in that her "male assistants" received a higher starting salary than she did. Complaint, ¶ 16.

Pittman apparently also asserted common law causes of action, including the intentional infliction of emotional distress and a claim that she suffered work-related injuries. Complaint, ¶¶ 17–20, 25–27. She also apparently alleged defamation. Complaint, ¶¶ 22–23.

*Discussion*

*A. Standard of Review*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court's task is to determine whether disputed issues of fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See also Todaro v. Bowman,* 872 F.2d 43 (3d Cir. 1989); *Joseph v. Hess Oil,* 867 F.2d 179, 182 (3d Cir.1989).

Although the summary judgment hurdle is a difficult one to overcome, it is by no means insurmountable. As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a fact issue,

its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'* ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'

*Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (emphasis in original, citations and footnotes omitted).

The court elaborated on the standard in *Anderson:* "If the evidence [submitted by a party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted). The Supreme Court went on to note in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Id.* at 323–24, 106 S.Ct. at 2553 (footnote omitted). Thus, once a case has been made in support of summary judgment, the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing the need for trial. *See* Fed.R.Civ.P. 56(e). *See also Aronow Roofing Co. v. Gilbane Building Co.,* 902 F.2d 1127, 1128 (3d Cir.1990) ("summary judgment will be granted where the non-moving party fails to 'establish the existence' of an element essential to the case.").

While pro se litigants are held to the above summary judgment standards, it is recognized that pro se submissions "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972).

### B. Claim and Issue Preclusion

■■■ Congress has provided that "judicial proceedings shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of [the] State ... from which they are taken." 28 U.S.C. § 1738.[6] Based upon this statutory direction, federal courts are to raise the issue of the preclusive effect of prior state court rulings whenever the courts of the state "from which the judgments emerged would do so." *Kelley v. TYK Refractories Co.,* 860 F.2d 1188, 1193 (3d Cir.1988) (quoting *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415–16, 66 L.Ed.2d 308 (1980)); *see also Van Dissel v. Jersey Cent. Power & Light, Co.,* 194 N.J.Super. 108, 121–122, 476 A.2d 310 (App.Div.), *cert. denied,* 99 N.J. 186, 491 A.2d 690 (1984). Accordingly, the preclusive effect under 28 U.S.C. § 1738, if any, of the proceedings resulting from the Verified Complaint will be determined with reference to New Jersey law. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Towers, Perrin, Forster & Crosby, Inc. v. Brown,* 732 F.2d 345 (3d Cir.1984).

■■■ Res judicata and collateral estoppel are "related but independent preclusion concepts." *Gregory v. Chehi,* 843 F.2d 111, 115 (3d Cir.1988). These doctrines generally prohibit relitigation of claims and issues decided in a prior proceeding. As summarized by the Supreme Court in *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979):

---

6. In the Act of May 26, 1790, ch. 11, 1 Stat. 122 Congress required all federal courts to give such preclusive effect to state court judgments "as they have by law or usage in the courts of the state from [which they are] taken." In essentially unchanged form, the Act of May 26, 1790 is now codified as 28 U.S.C. § 1738.

Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

(citing 1B J. Moore, Moore's Federal Practice ¶ 0.405(1) at 622–624 (2d ed. 1974)).

The term res judicata has been given a variety of meanings, some of which incorporate the distinct concept of collateral estoppel. *See Gregory,* 843 F.2d at 115 (citing A. Vestal, Res Judicata/Preclusion, V–13 to 14 (1969)). "To reduce the confusion that resulted from the interchangeable use of these terms, the courts have refined the nomenclature used in the preclusion doctrine." *Id.* (citing *Wade v. City of Pittsburgh,* 765 F.2d 405, 408 (3d Cir.1985)). The terms "claim preclusion" and "issue preclusion" will be used in this opinion. *See Migra,* 465 U.S. at 77, n. 1, 104 S.Ct. at 894, n. 1; *Electro–Miniatures Corp. v. Wendon Co.,* 889 F.2d 41, 44 (3d cir.1989); *Gregory,* 843 F.2d at 115–116. The term claim preclusion replaces res judicata; the term issue preclusion replaces collateral estoppel. *Electro–Miniatures,* 889 F.2d at 44; *Gregory,* 843 F.2d at 116.

Although issue and claim preclusion are similar, they have different consequences. "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *McNasby v. Crown Cork and Seal Co.,* 888 F.2d 270, 275 (3d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1783, 108 L.Ed.2d 784 (1990) (citing *Migra,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1). " 'Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.' " *Id.,* n. 7 (citing *Migra,* 465 U.S. at 77 n. 1, 104 S.Ct. at 894 n. 1).

The claim preclusion rules formulated by courts are "designed to draw a line between the meritorious claim[s] on the one hand and the vexatious, repetitious and needless claim[s] on the other hand." *Purter v. Heckler,* 771 F.2d 682, 689–90 (3d Cir.1985). Litigation should not be renewed after a case has been fully presented before a court and the issue has been decided against a litigant. *Id.*

Federal courts must look to state law in determining the preclusive effect of an earlier state court or administrative proceeding. *McNasby,* 888 F.2d at 271. For the assertion of issue preclusion the burden of proof in the earlier action must be commensurate with the standard in the present action. *In Re Braen,* 900 F.2d 621, 624, 626 (3d Cir.1990). In addition, the litigant against whom issue preclusion is invoked must have had a full and fair opportunity to litigate the issue in the previous tribunal. *Id.* at 628.

To invoke preclusion, it is required that the subsequent action must involve substantially similar or identical causes of action, issues, parties and relief as were involved in the prior action. *Culver v. Insurance Co. of North America,* 115 N.J. 451, 460, 559 A.2d 400 (1989). A final judgment by a court of competent jurisdiction is also required. *Id.*

To characterize two causes of action as the same for claim preclusion purposes, a court must analyze (1) whether the wrong for which redress is sought is the same in both actions (that is, whether the acts complained of and the demand for relief are the same), (2) whether the theory of recovery is the same, (3) whether the witnesses and documents necessary at trial are the same and (4) whether the material facts alleged are the same. *Id.* at 461–462, 559 A.2d 400 (citations omitted).

Issue preclusion, on the other hand, requires only that an issue of fact or law be determined in a valid proceeding and that final judgment on that issue was necessary to the decision. The decision on that issue is conclusive in any subsequent action between the parties on either the

same or different claim. *Alfone v. Sarno*, 87 N.J. 99, 112 n. 9, 432 A.2d 857 (1981); *Taylor v. Engelhard Industries*, 230 N.J. Super. 245, 253, 553 A.2d 361 (App.Div. 1989).[7]

### C. Gender Discrimination Claims Under New Jersey Law

■ The LAD prohibits employers from terminating or discriminating against employees on the basis of gender. *See* N.J. S.A. 10:5–12(a). The statute permits any individual who believes he or she was the victim of gender discrimination to either file a verified complaint with the DCR or to bring suit in the Superior Court of the State of New Jersey. N.J.S.A. 10:5–13. A final determination in either of these two avenues of redress precludes the claimant from bringing any other action based upon the same grievance. *See* N.J.S.A. 10:5–27; *Ferrara v. Tappan Co.*, 722 F.Supp. 1204, 1205 (D.N.J.1989). If a party to the complaint objects to the determination of the DCR, that party may appeal to the Appellate Division of the Superior Court under N.J.S.A. 10:5–21. Thus, once a claimant takes advantage of the administrative route which is swifter and less expensive than the alternative route of pursuing a claim in superior court, N.J.S.A. 10:5–27 prohibits other judicial remedies.

■ The claimant's election to pursue a grievance before the DCR serves to waive the claimant's right to pursue in state court other avenues of relief for the same grievance, except through the appellate process. *See Ferrara*, 722 F.Supp. at 1205 (citing *Christian Bros. Inst. of N.J. v. Northern N.J. Interscholastic League*, 86 N.J. 409, 415, 432 A.2d 26 (1981) ("*Christian Bros.*"); *Hermann v. Fairleigh Dickinson University*, 183 N.J.Super. 500, 444 A.2d 614 (App.Div.), *cert. denied*, 91 N.J. 573, 453 A.2d 884 (1982) (citations omitted)).

In *Christian Bros.*, the supreme court of New Jersey was presented with a claim brought pursuant to the LAD concerning the exclusion of a parochial high school ("Bergen Catholic") from membership in a public high school athletic league. Bergen Catholic filed a complaint with the DCR against the League. After a series of conferences and discussions, the parties expressed their desire to settle the matter and entered into an agreement to effectuate settlement. Thereafter, Bergen Catholic was not admitted to the League and did not attempt to challenge the denial of admission as violative of the agreement. Instead, it thereafter filed a suit in the law division of the New Jersey superior court charging unlawful discrimination in violation of its rights under the Constitutions of the United States and the State of New Jersey as well as the LAD and 42 U.S.C. § 1981. The supreme court of New Jersey concluded:

> [S]ince Bergen Catholic elected to seek relief in the [DCR], rather than file a suit in Superior Court, and agreed that the Conciliation Agreement entered into before the [DCR] was to operate as "a complete and final disposition of the matter" subject only to fulfillment pursuant to the enforcement provisions of the Law Against Discrimination, N.J.S.A. 10:5–17, it was barred by the exclusive jurisdiction language in N.J.S.A. 10:5–27, ..., from filing this suit.

*Christian Bros.*, 86 N.J. at 415, 432 A.2d 26.

The New Jersey supreme court held that the initial election by Bergen Catholic to pursue its grievance in the DCR operated to waive its right to pursue other avenues of relief for the same grievance in state court except with regard to appeal of the DCR decision in the Appellate Division. *Id.*[8] In substance, the New Jersey su-

---

**7.** The Supreme Court has held that issue and even claim preclusion may apply even if a claim is in the exclusive jurisdiction of the federal courts as long as state law would allow such preclusion. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381, 385, 105 S.Ct. 1327, 1332, 1334, 84 L.Ed.2d 274 *reh'g*

*denied*, 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985).

**8.** While the New Jersey supreme court recognized that the election to pursue its grievance in the DCR limited the administrative agency to pass on constitutional issues only to the extent relevant and necessary to a question within

preme court squarely held in *Christian Bros.* that Bergen Catholic took advantage of an administrative mechanism and as such was prohibited from a separate, additional resort to the judicial system.

In *Hermann,* the appellate division of the New Jersey superior court held that when an employee chose to pursue administratively a grievance for age and gender discrimination rather than seek court relief in the first instance, that choice became exclusive pursuant to the LAD. Specifically, Hermann filed a complaint with the DCR alleging discrimination based upon her age and gender. After a fact-finding conference and an administrative investigation, a field investigator submitted a report which recommended the case be closed due to a finding of no probable cause. After Hermann filed a notice of appeal with the appellate division, she elected to discontinue the appeal. Thereafter, she instituted suit for damages in the law division of the New Jersey superior court based upon the same allegations set forth in her administrative proceeding. The trial court dismissed the action, finding it was excluded by the previous adverse ruling on the same grievance in the DCR. *Hermann,* 183 N.J. Super. at 501–03, 444 A.2d 614.

The appellate division noted the LAD provides an alternate means for redress against or relief from unlawful discrimination. The LAD provides that an aggrieved party may file a suit in the superior court or seek relief in the DCR. N.J.S.A. 10:5–13. Relief in the DCR is normally more swift and less expensive than pursuing such a matter in the state courts. *Id.* at 504–05, 444 A.2d 614. The appellate division noted that where a plaintiff elects an administrative remedy, the LAD provides that such proceedings " 'shall exclude any other action, civil or criminal, based on the same grievance of the individual concern.' " *Id.* at 503, 444 A.2d 614 (citing N.J.S.A. 10:5–27).

Hermann argued that there was no final determination which would exclude a civil action because no hearing was ever conducted. The appellate division rejected this argument. It observed that "no hearing was requested and that, even had such a request been made, the administrative mechanism permitting disposition by the Director [of the DCR] without a hearing for lack of probable cause is not, in itself, violative of due process." *Id.* at 503–04, 444 A.2d 614.

Significantly, the comments of the appellate division are especially important with regard to the claims of Pittman:

Here, plaintiff elected the administrative route. When her grievance was dismissed for lack of probable cause, she was not deprived of judicial review of the propriety of that determination. She withdrew her appeal in which she could have pressed her argument that lack of a hearing violated her right to due process. "The proper procedure was to raise these claims before the Appellate Division on appeal...." ... By voluntary abandonment of the appellate process, she may not circumvent the statutory exclusion.

Plaintiff could have elected to seek relief in the courts in the first instance. ... However, having chosen to pursue her grievance administratively, that chosen remedy is exclusive while it is pending and when it has been concluded. ...

*The adverse [DCR] finding of no probable cause was a final appealable determination. Such a finding is a final order,* N.J.A.C. 13:4–15.3, and a final order of the Director of the [DCR] is appealable to the Appellate Division.

*Hermann,* 183 N.J.Super. at 504, 444 A.2d 614 (emphasis added).

Because Hermann took advantage of an alternate administrative mechanism which is quicker and less costly than suit in the superior court, she was prohibited additional resort to the judicial system except for appellate review of the adverse determination. Because she voluntarily abandoned her appeal from the finding of no probable cause, the appellate division affirmed the

their jurisdiction, Bergen Catholic could have obtained judicial determination of such constitutional claims by raising such claims before the appellate division of the Superior Court on appeal of an adverse decision by the DCR. *Christian Bros.,* 86 N.J. at 415–16, 432 A.2d 26.

decision of the trial court that she was precluded from seeking alternate relief by way of trial in the law division based upon the same grievance. *Id.* at 504–05, 444 A.2d 614.

The Supreme Court has read the full faith and credit clause of 28 U.S.C. § 1738 to mean that "a federal court [must] refer to the preclusion law of the State in which the judgment was rendered." *Marrese,* 470 U.S. at 380, 105 S.Ct. at 1332. "Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262, *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982). "This rule applies when assessing both the issue preclusive and the claim preclusive effect of the prior state court judgment." *McNasby,* 888 F.2d at 276.

In the instant case, Pittman initially chose to litigate her complaint through the swifter and less costly administrative procedure provided by the DCR. Under New Jersey law, the decision was "a final appealable determination [and s]uch a finding is a final order," *Hermann,* 183 N.J.Super. at 504, 444 A.2d 614, and as such must be given full faith and credit in this court.

As the Supreme Court held in *University of Tennessee v. Elliott,* however, unreviewed administrative agency decisions will not preclude a claimant from pursuing a Title VII case in federal court. 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). In *Elliott,* the Supreme Court, held that Congress intended to give no preclusive effect in Title VII cases to judicially unreviewed findings of a state agency.

The Court found preclusion inappropriate with regard to Title VII cases because of a conflict between a section of Title VII and the result from the application of preclusion rules. Specifically, 42 U.S.C. § 2000e-5(b) states the EEOC must give "substantial weight" to findings of fact by state or local agencies. Accordingly, the Court held that "it would make little sense

for Congress to write such a provision if state agency findings were entitled to preclusive effect in Title VII actions in federal court." *Id.* at 795, 106 S.Ct. at 3224. In arriving at this holding, the Court looked to *Kremer,* 456 U.S. at 461, 102 S.Ct. at 1886–87, and concluded: "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Elliott,* 478 U.S. at 796, 106 S.Ct. at 3225.

An unreviewed administrative agency determination is not at issue in the instant Title VII case, however. Pittman appealed the decision of the DCR, and the decision of the DCR was affirmed in all respects. Thus, the instant case falls squarely within *Kremer* and as such is precluded.

In *Kremer,* the plaintiff filed a charge of discrimination based on national origin with the New York State Division of Human Rights (the "NYHRD"). After investigating the complaint, the NYHRD concluded there was no probable cause to believe the defendant employer had engaged in national origin discrimination. The plaintiff appealed the decision of the NYHRD, and the Appellate Division of the New York Supreme Court unanimously affirmed the determination of the NYHRD. The plaintiff then filed a Title VII action in federal court, in which he complained of discrimination on the basis of national origin and religion by the same employer who had been named as defendant in his NYHRD action.

The Court observed that New York state's law of preclusion prevented a party from reinstituting a suit based on a claim previously litigated in the courts. The Court then held:

> Section 1738 requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged. Here the Appellate Division of the New York Supreme Court has issued a judgment affirming the decision of the NYHRD Appeals Board that the dis-

charge and failure to rehire Kremer were not the product of the discrimination that he had alleged. *There is no question that this judicial determination precludes Kremer from bringing 'any other action, civil or criminal, based upon the same grievance' in the New York courts.* *Kremer,* 456 U.S. at 467, 102 S.Ct. at 1889–90 (emphasis added, citations omitted). It therefore upheld the finding of the district court and Court of Appeals that the federal court claim was precluded by the state appellate court judgment, stating a few policy reasons for doing so:

> [S]tripping state court judgments of finality would be far more destructive to the quality of adjudication by lessening the incentive for full participation by the parties and for searching review by state officials. Depriving state judgments of finality not only would violate basic tenets of comity and federalism, but also would reduce the incentive for States to work towards effective and meaningful antidiscrimination systems.

*Id.* at 478, 102 S.Ct. at 1896 (citations omitted).

*Culver,* 115 N.J. at 451, 559 A.2d 400, sets forth New Jersey's requirements for claim preclusion: "The application of *res judicata* doctrine requires substantially similar or identical causes of action and issues, parties and relief sought.... In addition, there must be a 'final judgment by a court or tribunal of competent jurisdiction.' " *Id.* at 460, 559 A.2d 400 (citations omitted).

These requirements have been met in the instant case. Pittman's federal court action against Immunomedics is based on the same grievance as that presented to the DCR. As with the DCR Charges, Pittman here alleges she was discharged after having been sexually harassed by LaFontaine. She also repeats her allegations that she was unlawfully discharged on the basis of her gender as evidenced by her replacement by a male employee. The DCR issued a Finding of No Probable Cause after investigating Pittman's charges, and the

DCR's findings were affirmed by the Appellate Division.

However, even where, as here, a prior decision meets a state's requirements for claim preclusion, the prior decision will not be given preclusive effect if due process was not provided by the state forum in which the claim was previously litigated. "The State must ... satisfy the applicable requirements of the Due Process Clause. A state may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment." *Kremer,* 456 U.S. at 482, 102 S.Ct. at 1897.

The New Jersey Administrative Code, N.J.A.C. § 13:4–2.1 *et seq.,* sets forth the procedures to be utilized by the DCR in making its determinations. It authorizes the DCR to issue subpoenas, take depositions and serve interrogatories in investigating charges. N.J.A.C. § 13:4–2.2. It also provides the DCR may convene a fact-finding conference in order to obtain evidence, identify issues in dispute, ascertain the positions of the parties and explore avenues of settlement. N.J.A.C. § 13:4–2.3. The parties may bring witnesses to the fact-finding conference and may be accompanied by an attorney. *Id.* While the parties are not entitled to cross-examine witnesses, they may do so with the permission of the DCR representative. *Id.* Additionally, the DCR may deploy a field investigator to investigate the allegations of the complaint. N.J.A.C. § 13:4–6.1. In addition, under N.J.S.A. 10–5:13, a complainant is entitled to a more formal hearing before an administrative law judge as long as a request is made within one hundred and eighty days after the filing of the complaint with the DCR.

In the instant case, Pittman had a full and fair opportunity to litigate her claim before the DCR. Pittman attended the Fact–Finding Conference and was permitted to question witnesses through the investigator. Additionally, the DCR advised Pittman before arriving at a final determination that it needed additional substantiation in order to make a finding in her favor

and gave her the opportunity to provide it with additional documentation and witnesses. Pittman availed herself of this opportunity by providing the DCR with the names of additional witnesses at Immunomedics. The DCR spoke with those witnesses named by Pittman it was able to locate at Immunomedics. Finally, Pittman appealed the determination of the DCR to the Appellate Division, at which time she could have argued the administrative procedures provided in the administrative code were constitutionally deficient.

Courts have held the above-described administrative mechanism applicable to DCR determinations to be non-violative of due process. *Hermann*, 183 N.J.Super. at 504, 444 A.2d 614, *cert. denied*, 91 N.J. 573, 453 A.2d 884 (1982); *Ferrara*, 722 F.Supp. at 1205-06. *But see Wood v. Garden State Paper Co.*, 577 F.Supp. 632 (D.N.J.1983). That Pittman did not avail herself of all the provisions of the administrative code described above does not render it a violation of her due process rights to accord the DCR determination, affirmed by the Appellate Division, full faith and credit. "The fact that [a plaintiff] failed to avail [her]self the full procedures provided by state law does not constitute a sign of [the] inadequacy [of the state administrative procedures]." *Kremer*, 456 U.S. at 485, 102 S.Ct. at 1899.

Pittman was afforded a full and fair opportunity to litigate her claim. It is therefore not a violation of her due process rights to accord the final determination of the DCR, and the Appellate Division decision affirming that determination, preclusive effect. The claim by Pittman against Immunomedics is dismissed under claim preclusion principles.

Parker and Newman argue the complaint against them must be dismissed because Pittman did not name them in the DCR Charges and therefore did not exhaust her administrative remedies as is required by Title VII as a condition for bringing a federal court action.[9] They argue that this court therefore does not have jurisdiction over Pittman's claims against them. The Supreme Court has held that compliance with the filing period requirement is not a jurisdictional prerequisite to bringing an action in federal court. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982). However, a complainant must have exhausted his or her administrative remedies against a particular defendant before there is subject matter jurisdiction over a complaint against that defendant. *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 885-888 (3d Cir.1977); *Acampora v. Boise Cascade Corp.*, 635 F.Supp. 66, 70-71 (D.N.J.1986).

Because the purposes of the exhaustion requirement are to give notice to the charged party and to provide an avenue for voluntary compliance without resort to litigation, *Glus*, 562 F.2d at 888, a court may make an exception to the exhaustion requirement after considering:

(1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in

---

**9.** Section 706 of Title VII, 42 U.S.C. § 2000e-5, requires an aggrieved party to file a charge with the EEOC and await receipt of a "right to sue" letter before commencing an action in federal court. It provides in relevant part:

(e) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred....

(f)(1) If a charge filed with the Commission ... is dismissed by the Commission, or if

within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action under this section ... the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved....

42 U.S.C. § 2000e-5.

actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party. *Borecki v. Eastern Intern'l Management Corp.*, 694 F.Supp. 47, 53 (D.N.J.1988) (citing *Glus*, 562 F.2d at 888). Additionally, the court may consider whether the factual statements of the charges filed with the EEOC are sufficient to put the unnamed defendant on notice of his or her alleged role in the discrimination. *Id.* at 54.

In the instant case the DCR Charges were adopted by the EEOC. The DCR Charges did not name Parker and Newman as defendants and did not make any allegations as to their participation in the alleged discriminatory conduct. However, Pittman alleged in her complaint that Parker was the individual who terminated her and Parker asserted that it was she who signed the letter terminating Pittman's employment. Parker Aff., ¶ 13. Because Pittman interacted with Parker and because Newman was Pittman's direct supervisor, Pittman was able to name both Parker and Newman in the DCR Charges but neglected to do so. Moreover, the DCR Charges do not place Parker and Newman on notice as to the Pittman's complaint against them. Given these circumstances, the complaint by Pittman against Parker and Newman is dismissed for failure by Pittman to exhaust her administrative remedies.

■■■■■ The complaint by Pittman against LaFontaine is dismissed without prejudice *sua sponte*. While LaFontaine has not moved for summary judgment, a district court may dismiss a complaint of its own initiative if the complaint affords a sufficient basis for the court's action. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980); *Washington*

*Petroleum & Supply Co. v. Girard Bank*, 629 F.Supp. 1224, 1230–31 (M.D.Pa.1983); *Coggins v. Carpenter*, 468 F.Supp. 270, 279 (E.D.Pa.1979) (dismissing complaint *sua sponte* against non-moving defendants under Fed.R.Civ.P. 12(b)(6)). *See also Reich v. Beharry*, 686 F.Supp. 533, 535 (W.D.Pa. 1988) *aff'd*, 883 F.2d 239 (3d Cir.1989) (dismissing complaint *sua sponte* against non-moving defendant because jurisdictional defect supporting dismissal of complaint against moving defendant also supported dismissal of complaint against non-moving defendant).

Rule 4(j) of the Federal Rules of Civil Procedure requires service of the summons and complaint upon a defendant within 120 days after the filing of the complaint.[10] It appears Pittman made one attempt to serve LaFontaine at Immunomedics on 18 September 1990 and that she was unsuccessful because LaFontaine was no longer employed there. *See* Notice of Service for George LaFontaine. Pittman was obligated under Rule 4(j) to serve LaFontaine by 16 July 1990. It has now been approximately ten months since Pittman filed the complaint. In light of the amount of time which has transpired since Pittman's deadline for service on LaFontaine expired, the complaint against LaFontaine is dismissed without prejudice *sua sponte*.

■■■ Because the federal claims of Pittman brought pursuant to Title VII are dismissed as against all Defendants, her state claims are also dismissed for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Carney v. Dexter Shoe Co.*, 701 F.Supp. 1093, 1100 (D.N.J.1988) ("Where there exists no federal claim as a matter of law, the rationale for exercising pendant jurisdiction over state law claims generally does not apply.").[11] The complaint is dismissed as

---

**10.** Rule 4(j) provides in relevant part:

**Summons: Time Limit for Service.** If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.
Fed.R.Civ.P. 4(j).

**11.** Pittman states in her Opposition that she wishes to amend the complaint to include additional defendants and additional state law

against Immunomedics, Parker and Newman.

*Conclusion*

The motion by Immunomedics, Parker and Newman for summary judgment is granted. The complaint of Pittman is dismissed without prejudice *sua sponte* as against LaFonatine. The complaint of Pittman is dismissed in its entirety. An appropriate order accompanies this opinion.

causes of action. *See* Opposition. Pittman did not properly make her request by way of motion, and her request is moot in light of this decision.