**Steven H. UNTRACHT, M.D., Plaintiff,**

v.

**WEST JERSEY HEALTH SYSTEM, et al., Defendants.**

**Civ. A. No. 92–1559.**

United States District Court, D. New Jersey.

Sept. 10, 1992.

Carl J. Valore, Valore Law Firm, P.C., Linwood, N.J., for plaintiff.

Gary J. Lesneski, Archer & Greiner, Haddonfield, N.J., for defendants.

## OPINION

IRENAS, District Judge.

This action comes before the court upon defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). Because the court finds that Dr. Untracht's claims are barred by prior manifestations of this same litigation, defendants' motion is granted.

## I. Procedural and Factual Background

This dispute arose from plaintiff's suspension from staff privileges on the Garden State Medical Staff, which defendants claim was the result of plaintiff's care and treatment of a patient, Rose Reed, who later died. Dr. Untracht's basic position is that his suspension was the culmination of anticompetitive, conspiratorial efforts of various doctors in the West Jersey System including, Dr. Robert Weimann, Dr. Harold Friedman, President of Garden State [1] and Dr. Philip Aronow, Chairman of Surgery at Garden State.

On April 3, 1990, plaintiff was suspended from staff privileges on the Garden State Medical Staff. On April 26, 1990, plaintiff was suspended from staff privileges at the remaining West Jersey divisions, and on April 30, 1990 plaintiff was suspended from the Summit Surgical Center.

The dispute then proceeded through what appears to have been a lengthy and complex series of administrative hearings under West Jersey's Fair Hearing Plan. The hearings were completed in February, 1991, after 37 hearing days, thousands of pages of transcript and almost 200 exhibits. In its written report, the hearing panel concluded that the suspension had been justified, but recommended that Dr. Untracht be restored to full staff privileges after his completion of a supervised proctorship of 100 cases.

After his suspensions, Dr. Untracht filed suits in both this court and the state court in Burlington County. This action represents the third filing of essentially the same complaint by Dr. Untracht.

In the first instance, Dr. Untracht filed his complaint in this court on June 20, 1990, against most of the same defendants alleging that the hospital disciplinary actions against him were taken for malicious and anti-competitive reasons. That complaint, which sought immediate injunctive relief, asserted claims under the Health Care Quality Improvement Act of 1986, state and federal antitrust laws, due process violations, breach of contract and fiduciary duties and tortious interference with prospective economic advantage.

When plaintiff failed to obtain the temporary restraining order, he voluntarily dismissed his federal complaint on June 22, 1990, and on the same day re-filed substantially the same complaint, absent the federal antitrust claim, in the Superior Court of New Jersey, Chancery Division, Burlington County. In the state court, Dr. Untracht asserted claims for violations of due process, breach of contract, New Jersey anti-

---

1. There are two medical staff divisions, the Garden State Medical Staff and the West Jersey Medical Staff, within the West Jersey Health System. The Garden State staff provides services via the West Jersey–Marlton hospital division, and the West Jersey staff provides services via the remaining three hospital divisions in Camden, Voorhees and Berlin.

trust law (unfair competition and predatory competition), tortious interference with prospective economic advantage, casting false light, intentional infliction of emotional distress, and breach of fiduciary duty.

By comparison, in the current complaint, filed on April 2, 1992, Dr. Untracht has asserted claims for: violations under 42 U.S.C. § 1983, the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 et. seq., violations of Sections one and two of the Sherman Act, 15 U.S.C. §§ 1 and 2, and tortious interference with prospective economic advantage.

After the West Jersey hearing panel issued its report, the defendants moved to dismiss the complaint before the Chancery Division. In orders dated November 1, 1991 and January 22, 1992, Judge Gottlieb granted defendants' motion, dismissing the complaint with prejudice. Although his only opinions appear to have been stated on the record(s), his orders reveal that he determined that the record contains "sufficient reliable evidence ... to justify discipline taken against Dr. Untracht; and that the proceedings were fair and afforded Dr. Untract [sic] due process." *Order Dismissing Plaintiff's Complaint in Part*, New Jersey Superior Court, Chancery Div., Civ. No. C–124–90 (November 1, 1991).

## II. Summary Judgment Standard

The standard for granting a motion for summary judgment under Fed.R.Civ.P. Rule 56(c) is demanding and stringent. *Wilson v. Sullivan*, 709 F.Supp. 1351 (D.N.J.1989). Under Fed.R.Civ.P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court has stated that "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing

that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citation omitted) (internal quotations omitted).

At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility but to determine "whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511. There is no issue for trial unless there is sufficient evidence favoring the non-moving party such that a reasonable jury could return a verdict for that party. *Id.* Although the moving party bears the initial burden of informing the district court of the basis for its motion, there is no requirement in the Rule that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553.

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Finally, summary judgment should be granted unless a dispute over a material fact is genuine, which the Court has defined as such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. Claim Preclusion

Because the present action was preceded by a state court action arising from the same complex of events, the first question is necessarily whether plaintiff's complaint may be allowed to stand or whether his claims are precluded by his prior suit. The common law doctrine of claim preclusion, also sometimes known as *res judicata*, prevents parties or their privies from relitigating a cause of action that has been finally determined on the merits by a tribunal with jurisdiction. *Velasquez v. Franz*, 123 N.J. 498, 589 A.2d 143 (1991). The doctrine recognizes that in fairness to the defendant and sound judicial administration require a definite end to litigation. *Id.*

■ Generally, the binding effect of a judgment is determined by the law of the jurisdiction that rendered it since the preclusive effect of a judgment is the logical extension of the procedures of the issuing court. *Watkins v. Resorts Int'l. Hotel & Casino, Inc.*, 124 N.J. 398, 411, 591 A.2d 592, 598 (1991). Moreover, a federal court must give to a state court judgment the "same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

■ Three basic elements are required before a court can invoke claim preclusion: (1) the judgment in the first action must be valid, final and on the merits; (2) the parties in the later action must be the same as, or in privity with, those in the first action; and (3) the claim(s) in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. *Watkins*, 124 N.J. at 412, 591 A.2d at 599.

Not only does claim preclusion apply to claims actually litigated, but the New Jersey Supreme Court has explained that the doctrine applies to all claims that *should* have been brought in the earlier action. The Court stated,

> Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined. *Angel v. Bullington,* 330 U.S. 183, 192–93, 67 S.Ct. 657, 662, 91 L.Ed. 832, 838–39 (1947); *Culver v. Insurance Co. of N. Am.,* 115 N.J. 451, 463, 559 A.2d 400 (1989). For the purposes of res judicata, causes of action are deemed part of a single "claim" if they arise out of the same transaction or occurrence. *Restatement (Second) of Judgments, supra,* § 24. If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action. Otherwise theories, not raised will be precluded in a later action *Angel, supra,* 330 U.S. at 192–93, 67 S.Ct. at 662, 91 L.Ed. at 838–

39; *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 832 (6th Cir.1978).

*Watkins,* 124 N.J. at 412–413, 591 A.2d at 599; *See also Pittman v. La Fontaine,* 756 F.Supp. 834, 841 (D.N.J.1991).

■ Under New Jersey law, the entire controversy doctrine determines which claims "should" have been asserted in the prior action and, thus, the extent of the preclusive impact of a judgment in such action. *Culver v. Insurance Co. of North America,* 115 N.J. 451, 463, 559 A.2d 400 (1989); *See also Mazzilli v. Accident and Casualty Ins. Co.,* 45 N.J.Super. 137, 141, 131 A.2d 546 (App.Div.1957). In addition to precluding claims that should have been brought, the entire controversy doctrine has been extended to bar claims against parties who should have been named in the prior action but were not. *Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 26–28, 560 A.2d 1169, 1178–80 (1989).

■ Comparing the present case to Dr. Untracht's earlier state court action reveals that all of his claims, except the federal antitrust claims, are precluded by Judge Gottlieb's entry of summary judgment for the defendants. His order dismissing the complaint with prejudice was a final disposition on the merits for claim preclusion purposes. *See In Re Brown,* 951 F.2d 564, 569 (3d Cir.1991) (holding that state court grant of summary judgment should have been given preclusive effect despite fact that it was not final for appeal purposes). For preclusion purposes the judgment here is stronger because it was appealable, and Dr. Untracht currently has an appeal pending before the New Jersey Superior Court, Appellate Division.

Although there is no question whether Judge Gottlieb's grant of summary judgment was final or on the merits, it is worth noting that the Third Circuit has explained:

> Finality for purposes of issue preclusion is a more pliant concept than it would be in other contexts. The Restatement of Judgments mandates a pragmatic approach with reference to judicial policy rather than to finality in a technical sense. Final judgment with respect to issue preclusion includes any prior adju-

dication of an issue in another action between the parties that is determined to be sufficiently firm to be accorded conclusive effect.

*United States v. Johnson,* 620 F.2d 409, 412 (3d Cir.1980) (internal quotations and citations omitted).

The court finds that this case meets (except for the Sherman Act claims) the New Jersey claim preclusion requirements. All the named defendants in the present action were named in the prior state court action, except for Dr. Robert Minor, Chief of surgery of West Jersey Health Systems. Even if identical parties were otherwise required, under New Jersey's entire controversy doctrine, the addition of Dr. Minor would not save Dr. Untracht's complaint from preclusion.

■ New Jersey's entire controversy rule requires a plaintiff to join all parties with a material interest in the litigation, *i.e.* those who can affect or be affected by the judicial outcome of a legal controversy. *Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 560 A.2d 1169 (1989). In *Cogdell* the New Jersey Supreme Court held:

> We thus conclude that the entire controversy doctrine appropriately encompasses the mandatory joinder of parties. Accordingly, we now hold that to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy.

*Id.* at 26, 560 A.2d at 1178.

■ It is well-established that under the entire controversy doctrine, a plaintiff is precluded from relitigating both claims that he actually litigated in a prior proceeding and those that he could have brought in the earlier proceedings. *Bernardsville Quarry v. Bernardsville,* 929 F.2d 927, 930 (3d Cir.1991). Now that the New Jersey Supreme Court has explicitly held that the entire controversy rule applies to parties as well as claims, it follows that prior litigation must be given the same preclusive effect with respect to parties who could

have been, but were not joined, as to claims which could have been brought, but were not. *Cogdell v. Hospital Center at Orange,* 116 N.J. 7, 26–28, 560 A.2d 1169, 1178–80 (1989).

Because plaintiff has asserted claims in his most recent complaint that did not appear in his state court complaint, the next question is whether those claims should have been brought in that forum. If they should have been, then they will be precluded here under *Bernardsville Quarry.*

■ The only claims that appear in the current complaint that did not appear in the state court complaint are under 42 U.S.C. § 1983, the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 et. seq. and Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1 and 2. Because the state and federal courts have concurrent jurisdiction over Section 1983 claims, *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), Dr. Untracht could have brought his Section 1983 claim in his state court action. Accordingly, it is now barred.

■ The same is true of plaintiff's claim under the Health Care Quality Improvement Act. The Supreme Court has repeatedly explained that there is a strong presumption of concurrent jurisdiction unless Congress explicitly vests the federal courts with exclusive jurisdiction over a matter based on a federal statute. *See e.g. Tafflin v. Levitt,* 493 U.S. 455, 459, 110 S.Ct. 792, 795, 107 L.Ed.2d 887 (1990) (finding that state courts have concurrent jurisdiction over federal RICO claims). Although the Court there noted certain other factors which may preclude state court jurisdiction over a federal claim, none of them are applicable here. Accordingly, Dr. Untracht's claim under the Health Care Quality Improvement Act is now barred.

■ All that remains of the complaint at this point is the claim preclusion analysis of plaintiff's Sherman Act claims. *Nanavati v. Burdette Tomlin Memorial Hosp.,* 857 F.2d 96 (3d Cir.1988) *cert. denied* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989), also involved a physician asserting

claims in both federal and state forums arising from his loss of staff privileges. In that case, the plaintiff had not filed a state antitrust claim in his prior state action, but rather added it by amending his complaint in the District Court. *Nanavati v. Burdette Tomlin Memorial Hosp.*, 645 F.Supp. 1217, 1229, n. 22 (D.N.J.1986). The *Nanavati* defendants sought dismissal on the theory of claim preclusion, arguing that in effect: 1) under the entire controversy doctrine plaintiff should have been required to bring his state antitrust claims in the prior state court action; 2) because he failed to do so such claims are barred by New Jersey's law of claim preclusion; and 3) because the New Jersey antitrust statute is virtually identical to the relevant sections of the Sherman Act, plaintiff's Sherman Act claims should be barred in the federal action as well.

Relying on the Supreme Court's decision in *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985),[2] the Third Circuit disagreed. In a very detailed analysis, the Court rejected the argument primarily, if not entirely, because it found a jurisdictional requirement for claim preclusion. The Court stated:

Because we determine that New Jersey claim preclusion does not apply to claims over which the initial New Jersey court lacked jurisdiction, i.e., to claims which *could not* have been brought in New Jersey state court, we need not reach the factual question whether the factual nexus of Nanavati's federal antitrust claim is sufficiently related to the claims tried in state court that New Jersey's res judicata-based "entire controversy doctrine"

would apply. *Nanavati v. Burdette Tomlin Memorial Hosp.*, 857 F.2d 96 (3d Cir.1988).

Because *Nanavati* is controlling here, plaintiff's Sherman Act claims are not barred by claim preclusion.[3]

## IV. Issue Preclusion

■ The preclusive effects of former adjudications include not only the doctrine of *claim* preclusion (*res judicata*), but also an analogous doctrine once known as collateral estoppel and now known as *issue* preclusion.[4] Unlike claim preclusion, which applies to any claims that could have been brought in the prior action, *Watkins* 124 N.J. at 412, 591 A.2d at 599, issue preclusion applies only to bar relitigation of those *issues that were actually litigated* in the first suit. *Restatement (Second) of Judgments*, § 27 (1982) (Issue preclusion applies "When an issue of fact or law is actually litigated ...."); *Pittman*, 756 F.Supp. at 841; *Allesandra v. Gross*, 187 N.J.Super. 96, 103, 453 A.2d 904, 907 (App.Div.1982).

■ Unlike the state court action in *Nanavati*, in which no antitrust issue was raised, plaintiff here filed state antitrust claims in his state court action. Additionally, Judge Gottlieb necessarily decided that case on the merits when he granted summary judgment for the defendants and dismissed the complaint with prejudice. *See In Re Brown*, 951 F.2d at 569.

The Third Circuit has described New Jersey's antitrust statute as being "virtually identical to that of federal law," and noted further that the statute itself provides that it should be construed "in harmony with ruling judicial interpretations of compara-

2. As in *Nanavati* the Illinois state antitrust claim was not asserted by the plaintiff in the prior state court action. *Marrese* at 375, 105 S.Ct. at 1329.

3. Because the Sherman Act provides for jurisdiction exclusively within the federal courts, 15 U.S.C. § 4, a New Jersey court could scarcely reach the question whether a Sherman Act claim is precluded by a prior state court judgment. The trial court to which *Maresse* was remanded by the Supreme Court observed that it was being asked to perform a "metaphysical" task in deciding whether Illinois courts could

invoke claim preclusion to bar adjudication of a federal antitrust claim over which it had no jurisdiction in the first instance. *Marrese v. American Academy of Orthopaedic Surgeons*, 628 F.Supp. 918, 919 (N.D.Ill.1986).

4. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Restatement (Second) of Judgments*, § 27 (1982).

ble Federal antitrust statutes." *Nanavati,* 857 F.2d at 111. The events and conduct on which Dr. Untracht bases his allegations of anti-competitive and predatory conspiracy are the same for both sets of pleadings. Because of the similarity, if not exact duplication, of both the underlying facts and legal theories, this Court finds that Judge Gottlieb's summary judgment ruling for defendants in the state court action has necessarily decided the operative issues here. Accordingly, plaintiff is barred from attempting to relitigate in this court precisely the same antitrust issues decided in the state court action.

V. Conclusion

In opposition to this motion, the plaintiff has argued extensively that Judge Gottlieb's decision below was in error for a variety of reasons. This court does not sit as an appellate court for the New Jersey trial courts, so whatever errors may have been made in the state court can be addressed only in the state appellate courts. Moreover, whether a judge in a prior action ruled correctly or incorrectly has no independent bearing on the applicability of claim or issue preclusion.

For the reasons explained above all of the claims asserted by plaintiff in this action are precluded by the judgment previously rendered in the state court action decided by Judge Gottlieb.